FILED

2005 JUL 22  A 10: 02

U.S.

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

SECURITIES AND EXCHANGE COMMISSION, :

                Plaintiff,        :     CIVIL ACTION NO.

     v.                   :     3:00 cv 1941 (EBB)

PAUL J. SILVESTER, et al.

              Defendants.   :

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
ITS MOTION FOR ENTRY OF DEFAULT JUDGMENT
<u>AGAINST DEFENDANT BEN F. ANDREWS, JR.</u>**

Respectfully submitted,

Linda B. Bridgman
District Trial Counsel
DC Bar # 304824
Fed.  ID # ct 21694

Thomas J. Rappaport
Senior Enforcement Counsel
Va. Bar # 24284
Fed. ID # phv0404

ATTORNEYS FOR PLAINTIFF
SECURITIES AND EXCHANGE COMMISSION
73 Tremont Street, 6th Floor
Boston, Massachusetts 02108
(617) 573-8929 (Bridgman)
(617) 573-8986 (Rappaport)

Dated: July 21, 2005

# TABLE OF CONTENTS

SUMMARY AND PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.    The Parties. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    B.    Fraudulent Investment Scheme . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        1.    General operation of quid pro quo agreement and kickback scheme . . . . 3

        2.    Andrews' participation in the Landmark scheme . . . . . . . . . . . . . . . . . . 4

    C.    Andrews Received $250,000 in Ill-Gotten Gains from Landmark Scheme . . . . . 7

    D.    Andrews Convicted in Related Criminal Matter . . . . . . . . . . . . . . . . . . . . . . . 7

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

I.    LIABILITY SHOULD BE IMPOSED BASED ON ANDREWS' DEFAULT. . . . . . . . 7

    A.    The Allegations Of The Complaint Must Be Accepted As True . . . . . . . . . . . . 7

    B.    Andrews Aided and Abetted Violations of §17(a) of the Securities Act, §10(b) of the Exchange Act and Rule 10b-5 thereunder . . . . . . . . . . . . . . . . . . 8

    C.    Andrews Aided and Abetted Violation of §§ 206(1) and (2) of the Advisers Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

II.    RELIEF SHOULD BE GRANTED AGAINST ANDREWS INCLUDING ENTRY OF JUDGMENT ORDERING A PERMANENT INJUNCTION, DISGORGEMENT OF ILL-GOTTEN GAINS PLUS INTEREST, AND IMPOSITION OF CIVIL MONEY PENALTIES . . . . . . . . . . . . . . . . . . . . . . . . . . 16

    A.    Entry of a Permanent Injunction Against Andrews is Appropriate . . . . . . . . . . 16

    B.    An Order of Disgorgement and Prejudgment Interest Thereon is Appropriate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

    C.    Imposition of Civil Money Penalties is Appropriate . . . . . . . . . . . . . . . . . . . 20

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

i

## TABLE OF CASES

Aaron v. SEC, 446 U.S. 680 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Abrahamson v. Fleschner, 568 F.2d 862 (2d Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . 14

Andreo v. Friedlander, 660 F. Supp. 1362 (D.Conn. 1987) . . . . . . . . . . . . . . . . . . . . . . 12, n.6

Armstrong v. McAlpin, 699 F.2d 79 (2d Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Au Bon Pain Corp. v. Artect,Inc., 653 F.2d 61 (2d Cir. 1981) . . . . . . . . . . . . . . . . . . . . . 8

Basic v. Levinson, 485 U.S. 224 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Bloor v. Carro, 754 F.2d 57 (2d Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Central Bank of Denver v. First Interstate Bank of Denver, 511 U.S. 164 (1994) . . . . . . . . . . 8

CFTC v. Vartuli, et al., 228 F.3d 94 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Colonial Ltd. Partnership Litigation, 854 F. Supp. 64 (D.Conn. 1994) . . . . . . . . . . . . . . . 12

Ernst & Ernst v. Hochfelder, 425 U.S. 185 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Evanauskas v. Strumpf, 2001 WL 777477 (D.Conn. June 27, 2001) . . . . . . . . . . . . . . . . . 8

Hecht Co. v. Bowles, 321 U.S. 321 (1944) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Hollinger v. Titan Capital, Inc., 914 F.2d 1564 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . 9

In re Bilzerian, 153 F.3d 1278 (11th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

In re Martin-Trigona, 763 F.2d 503 (2d Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

ITT v. Cornfeld, 619 F.2d 909 (2nd Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Jones v. SEC, 115 F.3d 1173 (4th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Lanza v. Drexel & Co., 479 F.2d 1277 (2d Cir. 1973) . . . . . . . . . . . . . . . . . . . . . . . . . 9

Mayer v. Oil Field Systems Corp., 721 F.2d 59 (2d Cir. 1983) . . . . . . . . . . . . . . . . . . . . 10

National Union Fire Ins. Co. v. Turtur, 892 F.2d 199 (2d Cir. 1989) . . . . . . . . . . . . . . . . . . . . . 12

Powell v. H.E.F. Partnership, 835 F. Supp. 762 (D.Vt. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Rolf v. Blyth, Eastman Dillon & Co., 570 F.2d 38 (2d Cir. 1978) . . . . . . . . . . . . . . . . . . . . . 12

Ross v. Bolton, 904 F.2d 819 (2nd Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

SEC v. Blavin, 760 F.2d 706 (6th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

SEC v. Blatt, 583 F.2d 1325 (5th Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

SEC v. Bonastia, 614 F.2d 908 (3d Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

SEC v. Benson, 657 F. Supp. 1122 (S.D.N.Y. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

SEC v. Brethen, 1992 U.S. Dist. LEXIS 20665 (S.D. Ohio 1992) . . . . . . . . . . . . . . . . . . . . . . 20

SEC v. Capital Gains Research Bureau, 375 U.S. 180 (1963) . . . . . . . . . . . . . . . . . . . . . . . 14

SEC v. Cavanagh, 155 F.3d 129 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

SEC v. Commonwealth Chem. Sec., Inc., 574 F.2d 90 (2d Cir. 1978) . . . . . . . . . . . . . 16, 17, 18

SEC v. Cross Financial Services, 908 F. Supp. 718, 734 (C.D. Cal. 1995) . . . . . . . . . . . . . . . 19

SEC v. Custable, 1996 U.S. Dist. LEXIS 19321 (N.D. Ill. 1996) . . . . . . . . . . . . . . . . . . . . . 20

SEC v. Deyon, 977 F. Supp. 510, 519 (D. Me. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . 20

SEC v. Fife, 311 F3d. 1 (1st Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

SEC v. First City Financial Corp., 890 F.2d 1215 (D.C. Cir. 1989) . . . . . . . . . . . . . . . 17, 18, 19

SEC v. First Jersey Securities, 101 F.3d 1450, 1476 (2d Cir. 1996), cert. denied, 118 S. Ct. 57 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

SEC v. Gotchy, 981 F.2d 1251 (4th Cir. 1992) (unpublished opinion, see 1992 WL 385284) . . 19

SEC v. Global Telecom Services LLC, et al., 325 F.Supp. 2d 94 (D.Conn. 2004) . . . . . . . . . . 18

SEC v. Infinity Group Co., 212 F.3d 180 (3d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . 19

SEC v. Koracorp Industries, Inc., 575 F.2d 692 (9th Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . 17

SEC v. Lipson, 278 F.3d 656 (7th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

SEC v. Lorin, 76 F.3d 458 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

SEC v. MacDonald, 725 F.2d 9 (1st Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

SEC v. Management Dynamics, Inc., 515 F.2d 801 (2d Cir. 1975) . . . . . . . . . . . . . . . . . . . . . 16

SEC v. Manor Nursing Centers, Inc., 458 F.2d 1082 (2d Cir. 1972) . . . . . . . . . . . . . . . . . . 15, 17

SEC v. McNulty, 137 F.3d 732 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

SEC v. Moran, 944 F. Supp. 286 (S.D.N.Y. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

SEC v. Ridenour, 913 F. 2d 515 (8th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

SEC v. Rind, 991 F.2d 1486 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

SEC v. Scott, 565 F. Supp.1513, 1527 (S.D.N.Y. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

SEC v. Softpoint, Inc., 958 F. Supp. 846, 863 (S.D.N.Y. 1997) . . . . . . . . . . . . . . . . . . . . . . . 11

SEC v. Texas Gulf Sulphur Co., 446 F.2d 1301 (2d Cir. 1971) . . . . . . . . . . . . . . . . . . . . . . . 18

SEC v. Universal Major Indus. Corp., 546 F.2d 1044 (2d Cir. 1976) . . . . . . . . . . . . . . . . . . . 17

SEC v. Washington County Utility District, 676 F.2d 218 (6th Cir. 1982) . . . . . . . . . . . . . . . 10

SEC v. World Radio Mission, Inc., 544 F.2d 535 (1st Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . 17

SEC v. Zandford, 535 U.S. 813 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Sup't of Insurance v. Bankers Life and Casualty Co., 404 U.S. 6 (1971) . . . . . . . . . . . . . . . . 10

TSC Industries, Inc. v. Northway, Inc., 426 U.S. 438 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . 9

Trans World Airlines, Inc. v. Hughes, 449 F.2d 51 (2d Cir. 1971) . . . . . . . . . . . . . . . . . . . . . . 8

Weisberg v. Coastal States Gas Corp., 609 F.2d 650, 655 (2d Cir. 1979) . . . . . . . . . . . . . . . . 11

Plaintiff Securities and Exchange Commission ("SEC" or "Commission") files this memorandum in support of its Motion for Entry of Default Judgment Against Defendant Ben F. Andrews, Jr. ("Andrews") .

## SUMMARY AND PROCEDURAL BACKGROUND

On October 10, 2000, the SEC filed a Complaint alleging an undisclosed kickback scheme in which Paul Silvester ("Silvester"), former Treasurer of the State of Connecticut, invested $350 million of the Connecticut Retirement and Trust Funds ("Pension Fund") with certain private equity funds, upon their agreement to pay substantial fees to close friends and associates of Silvester. Compl. ¶1. Silvester's friends and associates included defendant Andrews, who in turn agreed to kick back part of his fee to Silvester. Compl. ¶¶2, 27, 35. As part of the scheme, Andrews, during 1998 and 1999, received and kept at least $250,000 as a "finder's fee" even though he performed no meaningful work in connection with Silvester's investment of Pension Fund monies. Compl. ¶¶2, 37, 40, 41.

On October 16, 2000, the SEC served Andrews with the Summons and Complaint by certified mail in care of his attorney, Jeremiah Donovan, Esq., who agreed to accept service on Andrews' behalf. [Civ. DK No. 12] Andrews failed to appear, answer or otherwise respond to the Commission's complaint, and on June 20, 2005, the Clerk of Court entered a default against him pursuant to Rule 55(a) of the Federal Rules of Civil Procedure. [Civ. DK No. 81][1]

---

[1]    The SEC's civil enforcement action was informally stayed pending resolution of a parallel criminal action against Andrews which resulted in his conviction and sentencing at the district court level in May 2005. U.S. v. Triumph Capital, et al., Crim. No. 3:00CR217 (EBB) (D.CT.). Andrews noticed an appeal of his conviction on May 23, 2005 which is pending.

By this motion, the Commission seeks entry of Default Judgment pursuant to Rule 55(b)(2) ordering (1) disgorgement of all ill-gotten gains Andrews received via the alleged kickback scheme plus prejudgment interest thereon, (2) payment of civil penalties, and (3) injunctions against future violations of §17 (a) of the Securities Act of 1933 ("Securities Act"), §10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 thereunder, and §§206(1) and (2) of the Investment Advisers Act of 1940 ("Advisers Act").  The SEC files a proposed Final Judgment by Default herewith.

## FACTUAL BACKGROUND

### A.    The Parties.

Defendant Silvester served as Treasurer of the State of Connecticut from July 1997 until January 1999, when he left office after losing the November 3, 1998 election.  Compl. ¶12. During this period, the state Pension Fund consisted of approximately $18 billion in assets held for 150,000 Connecticut teachers and other state and  municipal employees.  Compl. ¶23. Silvester, as state treasurer, was a fiduciary with authority to invest money from the Pension Fund on behalf of the beneficiaries.  Id.  At issue, are the investments Silvester made in vehicles known as private equity funds structured as limited partnerships.  Compl. ¶25.  Pension Fund investments in the private equity funds were made by purchasing a limited partnership interest which constituted a security.  ¶¶25, 59.

Defendant Christopher Stack ("Stack") was a close friend of Silvester who assisted him to structure the investment kickback scheme giving rise to this action (as well as the parallel criminal actions against Silvester, Andrews and others).  Compl. ¶¶17, 26. Silvester and Andrews were close friends and political allies during the period of the alleged scheme.  Compl. ¶16, 31.

Andrews participated in the portion of the kickback scheme Silvester arranged with Defendants Landmark Partners, Inc. ("Landmark") and its senior officer Stanley Alfeld ("Alfeld"). Compl. ¶¶ 1, 2.

Landmark was and is a Connecticut-based investment firm that manages funds totaling $1.5 billion. Compl. ¶13. Alfeld was its founder, chairman and managing partner. Compl. ¶14. In April/May 1998, Landmark solicited the Treasurer's office to invest in a limited partnership called Landmark Private Equity Fund VIII ("Landmark VIII") for which it acted as general partner. Compl. ¶29. Defendant Jerome Wilson ("Wilson") was an of-counsel member of the New York law firm Rogers & Wells, LLP, and Landmark's lawyer for the fraudulent transactions. Compl. ¶¶15, 31, 32, 34, 36, 43.[2]

**B.    Fraudulent Investment Scheme.**

**1.    General operation of quid pro quo agreement and kickback scheme.**

Beginning as early as March 1997, Silvester, who was then Deputy Treasurer, entered into a kickback arrangement with his close friend Stack, in which Silvester would direct Pension Fund investments to particular firms that agreed to pay fees to Stack, and in return, Stack would pay one half of his fees to Silvester. Compl. ¶26. The scheme continued into 1999. Compl. ¶¶25-40. Andrews joined the scheme in May 1998. Compl. ¶¶31-34. Silvester entered into arrangements with Landmark and other private equity firms that agreed to pay substantial fees to Stack and Andrews, among others, in order to secure Silvester's investment of Pension Fund monies. Compl. ¶¶1, 2, 26, 27. Stack and Andrews in turn kicked back a portion of those fees to

---

[2]    Judgments, by consent, were entered herein, inter alia, against Silvester on October 17, 2000, Stack on October 20, 2000, and Landmark and Alfeld on December 18, 2000. [Civ. DK No. 5, 6, 46] This action remains pending against defendants Andrews, Wilson and Charles B. Spadoni.

Silvester. Id. and ¶35.  As part of the scheme, Silvester's friends were to receive $3.5 million in fees from Landmark and other firms.  They ultimately received approximately $1.3 million of which Silvester expected and received a portion of these fees.  Compl. ¶4.

### 2.    Andrews' participation in the Landmark scheme.

In late April or early May 1998, Landmark approached the Treasurer's Office to solicit investment in a limited partnership Landmark was forming to make private equity investments. Compl. ¶29.  The limited partnership was called Landmark VIII.  Id.  In early May 1998, Silvester met with Alfeld at Landmark and indicated he was interested in investing in Landmark VIII.  Compl. ¶30.  At the same time, Silvester met with Landmark's attorney, Jerome Wilson, and made clear that he wanted Landmark to retain Andrews as a "finder" in connection with the Pension Fund's proposed investment in Landmark VIII.  Compl. ¶31.

Shortly after Silvester's meeting with Wilson, Andrews and Wilson met with Alfeld to discuss the details of Landmark's payment of a finder's fee to Andrews.  Compl. ¶32.  In order to secure the Pension Fund investment in Landmark VIII, Alfeld agreed to retain and pay Andrews a fee equal to 1% of the amount Silvester committed to invest with Landmark VIII.  Compl. ¶33. On May 19, 1998, Andrews informed Alfeld that Silvester would commit to invest $100 million of Pension Fund monies in Landmark VIII.  Compl. ¶34.  On May 20, 1998, Alfeld directed Landmark's attorney, Wilson, to retain and pay Andrews through his law firm, Rogers & Wells, on behalf of Landmark.  Id.  On May 28, 1998, Andrews signed an agreement with Rogers & Wells pursuant to which Andrews would receive a fee equal to 1% of any investment that the Pension Fund made in Landmark VIII.  Id.  Thus, pursuant to his May 28, 1998 agreement,

Andrews would receive $1 million in connection with Silvester's investment of $100 million of Pension Fund monies in Landmark VIII.

Andrews agreed to funnel part of his finder's fee to Silvester by using Stack as an intermediary. Compl. ¶¶2, 27, 35. In early June 1998, at Silvester's direction, Andrews instructed Landmark's attorney Wilson to make the arrangement to split Andrews' fee with Stack. Compl. ¶36.

In July 1998, the Pension Fund invested $100 million in Landmark VIII. Compl. ¶37. Silvester made the investment because Landmark agreed to pay a $1 million finder's fee to Andrews, part of which would be paid to Silvester pursuant to the kickback arrangement set up through Stack. Id. In about August 1998, Landmark paid Rogers & Wells $230,000 in fees related to the Landmark VIII investment. Id. In about September 1998, Rogers & Wells paid $100,000 in finder's fees to each of Andrews and Stack. Id.

In December 1998, after losing the November 3, 1998 election, Silvester invested an additional $50 million in Landmark VIII. Compl.¶40. He made the additional investment in part because it entitled Andrews and Stack to split an additional finder's fee of $500,000, a portion of which would be paid to Silvester pursuant to their kickback arrangement. Id.

Silvester inserted Andrews into the Landmark VIII investment as a "finder" *after* Silvester had already expressed to Alfeld his interest in investing with Landmark. Compl. ¶41. Therefore, there was no need for Landmark to pay a finder's fee to Andrews to obtain access or an introduction to Silvester. Id. In addition, Andrews performed no meaningful work in connection with Silvester's $150 million investment in Landmark VIII. Id.

Silvester received kickbacks from the Pension Fund investment with Landmark VIII during approximately September 1997 to October 1998. Compl. ¶38. He used the kickbacks for personal expenses which were not for the benefit of the Pension Fund. Compl. ¶39. Andrews received and retained a total of $250,000 in finder's fees related to the Pension Fund's $150 million investment in Landmark VIII. Compl. ¶¶37, 40. The payments were made in installments in September 1998, January 1999, and February 1999. Id. See also, July 21, 2005 Declaration of Corliss A. Primavera ¶5 submitted in support of this motion for default judgment against Andrews. ("Primavera Decl.")

Alfeld knew or recklessly disregarded that Silvester inserted Andrews into the investment deal and required Landmark to pay Andrews a substantial fee for essentially doing no work as a condition of making the Pension Fund investment in Landmark VIII. Compl. ¶42. Because Alfeld is a senior officer of Landmark, his conduct and knowledge are imputed to Landmark. Id. Silvester, Alfeld and Landmark owed a fiduciary duty to the Pension Fund. Compl. ¶¶59, 60. They variously breached those duties by failing to disclose Silvester's kickback scheme and the quid pro quo arrangement Silvester established with Alfeld and Landmark. Id.

Andrews knew or recklessly disregarded that Silvester arranged for him to receive a substantial finder's fee from Landmark in exchange for Silvester's investment of Pension Fund money in Landmark VIII. Compl. ¶44. In addition, Andrews provided substantial assistance to the kickback scheme by agreeing to accept finder's fees from Landmark and by funneling kickbacks to Silvester. Compl. ¶¶27, 35, 44.

6

**C.    Andrews Received $250,000 in Ill-Gotten Gains from Landmark Scheme.**

As a result of the defendants' kickback scheme, Landmark paid Andrews $100,000 in purported finders fees in September 1998, $50,000 in January 1999, and $100,000 in February 1999. Primavera Decl. ¶5 and Compl. ¶¶ 37, 40. Thus, Andrews received a total of $250,000 in ill-gotten gains as a result of the misconduct described in the Complaint. Id.

**D.    Andrews Convicted in Related Criminal Matter.**

On October 11, 2000, a federal grand jury sitting in Hartford, Connecticut returned a criminal indictment against Andrews and others titled United States v. Triumph Capital, et al., Crim. No. 3:00CR217 (EBB). [Cr. DK No. 1]  The criminal action was founded on the facts underlying the Commission's civil complaint against Andrews and others.  On October 29, 2003, the jury returned a guilty verdict against him on nine counts including federal bribery, mail and wire fraud, conspiracy to launder money, and making false statements to federal agents. [Cr. DK no. 796]  On May 2, 2005, Andrews was sentenced in the parallel criminal action [Cr. DK No.919] Thereafter, Criminal Judgment and Amended Criminal Judgments entered against Andrews on May 27, June 9, and June 24, 2005, respectively. [Cr. DK Nos. 930, 932, 935] Andrews noticed an appeal of his conviction on May 23, 2005. [Cr. DK No. 931]

## ARGUMENT

I.    **LIABILITY SHOULD BE IMPOSED BASED ON ANDREWS' DEFAULT.**

A.    **The Allegations Of The Complaint Must Be Accepted As True.**

Upon default, the factual allegations of the Complaint are taken as true.  Accordingly, because Andrews is in default in this action, the allegations of fact in the Commission's Complaint must be taken as true and accepted as forming the basis of judgment against him.  In

7

re Martin-Trigona, 763 F.2d 503, 505 n.2 (2d Cir. 1985) ("the defaulting party may be held to admit all the factual allegations of the complaint"); Au Bon Pain Corp. v. Artect,Inc., 653 F.2d 61, 65 (2d Cir. 1981) (on default, the district court "should have accepted as true all of the factual allegations of the complaint, except those relating to damages"); Trans World Airlines, Inc. v. Hughes, 449 F.2d 51, 63 (2d Cir. 1971) ("by its default [the defendant] admitted every 'well pleaded allegation' of the complaint"), rev'd on other grounds, 409 U.S. 363 (1973); Evanauskas v. Strumpf, 2001 WL 777477, *3 (D.Conn. June 27, 2001) ("because the court finds the defendants in default, such allegations are taken as true and form the basis for a default judgment"). As described below, the factual allegations of the Complaint demonstrate that the Commission is entitled to judgment against defendant Andrews on claims four, five and six for aiding and abetting violations of §17(a) of the Securities Act, §10(b) of the Exchange Act and Rule 10b-5 thereunder, and §§ 206(1) and 206(2) of the Advisers Act committed, variously, by Silvester, Landmark and Alfeld.

**B.    Andrews Aided and Abetted Violations of §17(a) of the Securities Act, §10(b) of the Exchange Act and Rule 10b-5 thereunder.**

The Commission charges Andrews in its Fourth Claim with aiding and abetting primary violations of §17(a) of the Securities Act by Alfeld and Landmark, and in its Fifth Claim with aiding and abetting primary violations of §10(b) of the Exchange Act and Rule 10b-5 thereunder by Silvester, Alfeld and Landmark. Compl. ¶¶74, 78, 84, 88.[3] Securities Act §17(a) prohibits

---

[3]    Exchange Act § 20(e) expressly authorizes prosecution by the Commission of any persons who aid and abet violation of the Act. 15 U.S.C. § 78t(e). Neither the Supreme Court's decision in Central Bank of Denver v. First Interstate Bank of Denver, 511 U.S. 164 (1994) which discussed aiding and abetting liability under the Exchange Act in private actions, nor the Private Securities Litigation Reform Act of 1995, Pub. L. No. 104-67, 109 Stat. 737 (1995) which codified §20(e), addressed or curtailed the Commission's existing authority to charge aiding and abetting violations of the Securities Act.

any fraudulent device or scheme, and materially false and misleading statements or omissions, in the *offer* and sale of securities. Exchange Act § 10(b) and Rule 10b-5 thereunder prohibit the use of fraudulent devices and false and misleading statements or omissions in connection with the *purchase* and sale of securities.

To establish primary violations of §17(a)(1) of the Securities Act and §10(b) of the Exchange Act and Rule 10b-5 thereunder, the Commission must show scienter, which is defined as a mental state embracing intent to deceive, manipulate or defraud.[4] Ernst & Ernst v. Hochfelder, 425 U.S. 185, 194 n. 2 (1976); Aaron v. SEC, 446 U.S. 680 (1980). Scienter may be established by a showing of recklessness. Lanza v. Drexel & Co., 479 F.2d 1277, 1305 (2d Cir. 1973); Hollinger v. Titan Capital, Inc., 914 F.2d 1564, 1569 (9th Cir. 1990). To establish a violation of the antifraud provisions of the securities laws, any misrepresentations and omissions must be material. TSC Industries, Inc. v. Northway, Inc., 426 U.S. 438, 449 (1976). Statements and omissions are material if a reasonable investor would consider them important in the total mix of information available. Basic v. Levinson, 485 U.S. 224, 231-232 (1988); TSC Industries, Inc., 426 U.S. at 449. A fact is material if there is a substantial likelihood that a reasonable investor would consider it important in making an investment decision. Id. In its most recent analysis of the "in connection with" requirement of §10(b), the Supreme Court required only that the defendant's fraud "coincide" with the purchase and sale of securities, and expressly held that the fraud need not relate to the value of any particular investment vehicle to violate the Act. SEC v. Zandford, 535 U.S. 813, 820-22 (2002). The statute is "construed not technically and

---

[4]     Scienter is not required to establish violations of §§ 17(a)(2) and 17(a)(3) of the Securities Act, and so negligent conduct is sufficient. *See* Aaron v. SEC, 446 U.S. 680, 697 (1980).

9

restrictively, but flexibly to effectuate its remedial purpose." Id. at 819 (internal quotations

omitted). In addition, and as earlier enunciated by the Court, to satisfy the "in connection with"

requirement, a fraud need only "touch" upon the purchase or sale of securities. Sup't of

Insurance v. Bankers Life and Casualty Co., 404 U.S. 6, 12-13 (1971).

Investment in the limited partnership interests of Landmark VIII constituted investment in

a security. See Mayer v. Oil Field Systems Corp., 721 F.2d 59, 65 (2d Cir. 1983) (limited

partnership interests are securities). Silvester's kickback scheme and his quid pro quo

arrangement with Alfeld and Landmark occurred "in connection with" his investment of $150

million of Pension Fund monies in Landmark VIII during July and December 1998 because their

arrangement coincided with and arose out of, i.e., "touched," the investment. The investment

was made and the *amount* of the investment was determined by Silvester's effort to obtain fees

for his friends and himself, initially based on a $100 million investment which he increased by

$50 million after losing his November 1998 election. Compl. ¶¶37, 40. Neither Silvester, Alfeld

nor Landmark disclosed their arrangements to the Pension Fund. The omission was material

because there is a substantial likelihood a reasonable investor would conclude that information --

indicating that the $150 million investment was made in order to provide the state treasurer,

Silvester, a substantial kickback of fees related to the transaction, and that such fees were

generated as a quid pro quo for the investment -- was important to determine whether the

investment was appropriate.[5] Silvester, Alfeld and Landmark knew or recklessly disregarded that

---

[5]     Courts have held that information about kickbacks or conflicts of interest that undermine the
fiduciary's judgment in securities fraud cases is material. SEC v. Washington County Utility District,
676 F.2d 218, 225 (6th Cir. 1982) (information about kickbacks to public official concerning bond
offering was material because investors who had the information could have reasonably concluded that
the kickbacks increased the cost of the offering or that the quality of the bond offering's management

their arrangements were fraudulent as evidenced by the nature of the kickback scheme and quid pro quo agreement and by their failure to disclose the scheme and agreement to the Pension Fund. See also discussion of Landmark and Alfeld scienter, infra, at p.15. Morever, Silvester intended to manipulate or defraud the Pension Fund investment process for the benefit of himself and his friends, Andrews and Stack. His investment decisions were motivated by his desire to enrich himself and his friend in violation of his fiduciary duty to the Pension Fund and its beneficiaries. Compl. 59.

Thus, Alfeld and Landmark, which offered and sold investment in Landmark VIII to the Pension Fund, violated §17(a) of the Securities Act by paying substantial fees to Silvester's friends and associates, i.e., Andrews and Stack, in order to secure Silvester's investment of $150 million of Pension Fund monies in Landmark VIII, and by failing to disclose the quid pro quo arrangement to the Pension Fund. Compl. ¶¶65, 71. Their conduct also violated §10(b) of the Exchange Act and Rule 10b-5 thereunder. Compl. ¶¶62, 82.

Similarly, Silvester committed primary violations of violated §10(b) and Rule 10b-5 of the Exchange Act by soliciting substantial fees for his friends and associates, i.e., Andrews and Stack, in return for investing $150 million of Pension Fund monies with private equity funds, including Landmark and Landmark VIII, by receiving kickbacks of a portion of those fees, and

---

was suspect); see also Weisberg v. Coastal States Gas Corp., 609 F.2d 650, 655 (2d Cir. 1979) (information about bribes and kickbacks to directors would be material to reasonable investors in deciding whether to re-elect directors); SEC v. Softpoint, Inc., 958 F. Supp. 846, 863 (S.D.N.Y. 1997) (payments to brokerage firms under kickback agreement were material information); SEC v. Scott 565 F. Supp.1513, 1527 (S.D.N.Y. 1983) (investors would obviously consider kickback agreement between issuer and underwriter as material information since it raises inherent conflict of interest and undermines independence of underwriter's investment judgment).

11

by failing to disclose the kickback scheme and quid pro quo arrangement to the Pension Fund. Compl. ¶¶62, 81.

Aiding and abetting liability requires a showing of three elements: "(1) a securities law violation by a primary party; (2) scienter on the part of the aider and abettor; and (3) 'substantial assistance' by the aider and abettor in the achievement of the primary violation." Colonial Ltd. Partnership Litigation, 854 F. Supp. 64, 98 (D.Conn. 1994) (quoting National Union Fire Ins. Co. v. Turtur, 892 F.2d 199, 206-07 (2d Cir. 1989); Armstrong v. McAlpin, 699 F.2d 79, 91 (2d Cir. 1983); ITT v. Cornfeld, 619 F.2d 909, 922 (2nd Cir. 1980); Rolf v. Blyth, Eastman Dillon & Co., 570 F.2d 38, 47-48 (2d Cir. 1978); cf., Ross v. Bolton, 904 F.2d 819, 824 (2nd Cir. 1990) (plaintiff must allege, in addition to securities law violation by primary wrongdoer, that defendant knew of wrong and substantially assisted in perpetrating it). Generally, recklessness satisfies the scienter requirement where the aider and abettor owes a fiduciary duty to disclose to the defrauded party. Id. Where there is no fiduciary duty, the "scienter requirement scales upward" to require that the assistance rendered be knowing and substantial. Armstrong, 699 F.2d at 91; Cornfeld 619 F.2d at 923.[6] The "substantial assistance" requirement can be met if the defendant engages in affirmative conduct that furthers the primary violation. Powell v. H.E.F. Partnership, 835 F. Supp. 762 (D.Vt. 1993) (law firm substantially assisted fraud by preparing offering memoranda that contained material omissions) (citing Andreo v. Friedlander, 660 F. Supp. 1362, 1366 (D.Conn. 1987). See also, Bloor v. Carro, 754 F.2d 57, 62 (2d Cir. 1985)(to

---

[6]    But see, Andreo v. Friedlander, Gaines, etc., 660 F.Supp. at 1367 (existence of fiduciary duty is not prerequisite for application of recklessness standard to satisfy knowledge element of aiding and abetting where reasonably foreseeable that potential investors may rely on services of alleged aider and abettor).

meet "substantial assistance" requirement, acts of aider and abettor must proximately cause harm).

In this case, all three elements of aiding and abetting liability are satisfied. As established above, Silvester, Alfeld and Landmark variously committed primary violations of §17(a), §10(b) and Rule 10b-5 thereunder. Next, Andrews knew or recklessly disregarded that Silvester arranged for him to receive substantial finder's fees from Landmark *in exchange* for Silvester's investments of pension fund money with Landmark VIII because he was inserted into the transaction after Silvester had determined to make the investment, and because he knew he performed no meaningful work related to the transaction. Compl. ¶¶41, 44. Finally, Andrews provided substantial assistance to the kickback scheme. *After* Silvester had indicated to Alfeld that he was interested in investing with Landmark and instructed Landmark's attorney Wilson to insert Andrews into the deal as a "finder" in early May 1998, Andrews and Wilson met with Alfeld to discuss Andrews' fee. Compl. ¶¶30-32. *Thereafter*, on May 19, 1998, Andrews informed Alfeld that Silvester would commit to a $100 million investment. Compl. ¶34. *Thereafter*, on May 28, 1998, Andrews signed an agreement with Rogers & Wells, which was acting on behalf of Landmark, to accept a fee equal to 1% of the Pension Fund's investment in Landmark. Compl. ¶34. *Thereafter*, at Silvester's direction, Andrews instructed Landmark's attorney to split Andrews' fee with Stack in order to funnel the funds to Silvester. Compl. ¶¶27, 35, 36, 44. Such conduct evidences a high degree of scienter and affirmatively furthered Silvester's kickback scheme and Silvester's quid pro quo arrangement with Alfeld and Landmark. Accordingly, Andrews aided and abetted violations of §10(b) of the Exchange Act

13

and Rule 10b-5 thereunder by defendants Silvester, Landmark and Alfeld, and violations of

§17(a) of the Securities Act by defendants Landmark and Alfeld.

### C.     Andrews Aided and Abetted Violation of §§ 206(1) and (2) of the Advisers Act.

Claim six of the Commission's complaint charges Andrews with aiding and abetting

Landmark's violations of §§ 206(1) and 206(2) of the Advisers Act. Compl. ¶¶95, 101.[7]  These

sections make it unlawful for an investment adviser to employ any device or scheme to defraud,

or to engage in conduct which operates as a fraud or deceit, on any client or prospective client.

Investment advisers are fiduciaries and therefore have a duty of "utmost good faith and full and

fair disclosure of all material facts" to their clients. SEC v. Capital Gains Research Bureau, 375

U.S. 180, 194 (1963). Violation of §206(1) requires a showing of scienter, which is not required

under §206(2). Id. at 195-97. Sections 206(1) and (2) are violated if an adviser affirmatively

misrepresents a material fact to a client, or if it fails to disclose a material fact. Id.

Landmark was general partner of the Landmark VIII limited partnership investment fund.

Compl. ¶29. It advised the investment fund regarding investment in privately held companies.

Compl. ¶¶25, 29. Thus, it acted as an investment adviser for the fund and its investors. See

Abrahamson v. Fleschner, 568 F.2d 862, 865 (2d Cir. 1978) (holding that the general partner in a

limited partnership investment fund is an investment adviser). The Pension Fund was a

prospective investment advisory client of Landmark as of April 1998 when Landmark solicited

the Treasurer's Office to invest in Landmark VIII. Compl. ¶¶29, 60. The Pension Fund

---

[7]     Advisers Act § 209(d) authorizes the Commission to bring an action in U.S. District Court
against anyone who aids and abets violations of the Act.

14

subsequently became a client in July 1998 when it invested $150 million in Landmark VIII and became a limited partner in the investment fund. Compl. ¶¶37, 60.

Landmark committed fraud and deceit upon its client, the Pension Fund, in violation of §§206(1) and (2) by failing to disclose to the Fund that, in July and December 1998, Silvester invested $150 million with Landmark in exchange for Landmark's payment of finders fees to Andrews and Stack. Compl. ¶91. The conduct and scienter of its principal, Alfeld, can be imputed to Landmark. SEC v. Manor Nursing Centers, Inc., 458 F.2d 1082, 1096 n.16 (2d Cir. 1972). Specifically, Alfeld agreed to pay a finder's fee to Andrews related to the Pension Fund investment in late May 1998, *after* Landmark had already directly contacted the Treasurer's Office to solicit the investment in April 1998 and Silvester had indicated an interest in making the investment directly to Alfeld in early May 1998. Compl. ¶¶29-34, 41. Alfeld knew or recklessly disregarded that Silvester, through Landmark's lawyer Wilson, had inserted Andrews into the deal *after* Silvester had indicated an interest in investing to Alfeld. Compl. ¶¶31, 32. Alfeld knew or recklessly disregarded that Andrews was not necessary to the deal and was paid a substantial fee for doing no work. Compl. ¶¶41-42. Alfeld's knowledge of wrongdoing is further demonstrated by his effort to distance himself and Landmark from the hiring of and payments to Andrews by having Wilson and his law firm Rogers & Wells retain and pay Andrews. Compl. ¶¶34, 37. Landmark, by its senior officer Alfeld, thereby failed to disclose material information to its client, the Pension Fund, regarding the Fund's investment in Landmark VIII, and breached its fiduciary duty to the Pension Fund. Thus, Landmark committed a primary violation of §§206(1) and (2). Compl. ¶¶68, 91.

15

Andrews aided and abetted Landmark's violations of §§206(1) and (2). Compl. ¶¶95, 101. As described above, Andrews knew or recklessly disregarded that Landmark paid him substantial finder's fees in exchange for Silvester's investments of Pension Fund money with Landmark VIII. Andrews provided substantial assistance to the kickback scheme and <u>quid pro quo</u> arrangement by agreeing to accept the finder's fees from Landmark and by arranging through Landmark's attorney Wilson to funnel kickbacks to Silvester through Stack. Compl. ¶¶27, 35, 36, 44. Accordingly, he is liable for aiding and abetting Landmark's violations of §§ 206(1) and 206(2).

## II. RELIEF SHOULD BE GRANTED AGAINST ANDREWS INCLUDING ENTRY OF JUDGMENT ORDERING A PERMANENT INJUNCTION, DISGORGEMENT OF ILL-GOTTEN GAINS PLUS INTEREST, AND IMPOSITION OF CIVIL MONEY PENALTIES.

### A.    <u>Entry of a Permanent Injunction Against Andrews is Appropriate</u>.

The Commission seeks injunctive relief, permanently enjoining Andrews from further violations of §17(a) of the Securities Act, §10(b) of the Exchange Act and Rule 10b-5 thereunder, and §§206(1) and (2) of the Advisers Act. The authority of a federal district court to order permanent injunctive relief in a Commission enforcement action is well established. <u>See</u>, <u>e.g.</u>, <u>SEC v. McNulty</u>, 137 F.3d 732, 741 (2d Cir. 1998); <u>SEC v. Commonwealth Chem. Sec., Inc.</u>, 574 F.2d 90, 99-100 (2d Cir. 1978); <u>SEC v. Management Dynamics, Inc.</u>, 515 F.2d 801, 807 (2d Cir. 1975); <u>SEC v. Benson</u>, 657 F. Supp. 1122, 1132-33 (S.D.N.Y. 1987). Permanent injunctions may be ordered as part of a judgment by default upon a finding by the Court that a factual basis for such relief exists. <u>See</u>, <u>e.g.</u>, <u>SEC v. McNulty</u>, 137 F.3d at 736-37; <u>Management Dynamics, Inc.</u>, 515 F.2d at 814.

Securities Act § 20(b), Exchange Act § 21(d), and Advisers Act § 209(d) empower the Commission to seek permanent injunctive relief upon a showing that (1) violations of the securities laws have occurred, and (2) there is a reasonable likelihood that violations will occur in the future. 15 U.S.C. § 77t(b); 15 U.S.C. § 78u(d); 15 U.S.C. § 80b-9(d); Jones v. SEC, 115 F.3d 1173, 1179 (4th Cir. 1997); Commonwealth Chem. Sec., Inc., 574 F.2d at 99-100; Manor Nursing Ctrs., Inc., 458 F.2d 1082, 1100-1101 (2d Cir. 1972); Benson, 657 F. Supp. at 1132-33. The primary purpose of injunctive relief is to deter future violations, not to punish violators. SEC v. Koracorp Industries, Inc., 575 F.2d 692, 697 (9th Cir. 1978), citing, Hecht Co. v. Bowles, 321 U.S. 321, 329 (1944). The legal standard applied to determine whether injunctive relief is warranted is whether there is a reasonable likelihood that the defendant will engage in future violations of the law. See, e.g., SEC v. Fife, 311 F3d. 1, 8 (1st Cir. 2002); SEC v. Cavanagh, 155 F.3d 129, 135 (2d Cir. 1998); SEC v. First City Financial Corp., 890 F.2d 1215, 1228 (D.C. Cir. 1989); SEC v. Bonastia, 614 F.2d 908, 912 (3d Cir. 1980); Commonwealth Chemical Securities, Inc., 574 F.2d at 99-100 (quoting Loss, 3 Securities Regulation 1976 (1961)); SEC v. World Radio Mission, Inc., 544 F.2d 535, 541 (1st Cir. 1976); SEC v. Universal Major Indus. Corp., 546 F.2d 1044, 1048 (2d Cir. 1976); see also Manor Nursing Ctrs., 458 F.2d at 1100.

As discussed above, Andrews violated the federal securities laws by aiding and abetting Silvester's kickback scheme and quid pro quo arrangement with Alfeld and Landmark. Compl. ¶¶ 1-3, 31-34. As a result of his aid to and participation in the scheme, Andrews was slated to receive $1.5 million in finder's fees from the Pension Fund's $150 million investment in Landmark VIII. Compl.¶¶ 34, 37, 40, 41. He funneled a portion of those fees to Silvester through Stack, and retained at least $250,000 of those fees for performing no meaningful work

related to the investment. Compl. ¶¶35-38, 40, 41. Andrews's violative conduct was egregious and displayed a high degree of scienter because he knew or recklessly disregarded that he was aiding and abetting a kickback scheme and quid pro quo arrangement. Compl. ¶44. Moreover, Andrews has not given any assurances that he will not violate the securities laws in the future. On the contrary, the egregiousness of this scheme, together with the fact that Andrews has failed to defend this action against him, reflects a reasonable likelihood that he will commit such violations in the future. Thus, a permanent injunction against further violations of §17(a) of the Securities Act, §10(b) of the Exchange Act and Rule 10b-5 thereunder, and §§206(1) and (2) of the Advisers Act should be entered against Andrews.

### B. An Order of Disgorgement and Prejudgment Interest Thereon is Appropriate.

"Disgorgement is an equitable remedy designed to deprive a wrongdoer of his unjust enrichment and to deter others from violating the securities laws." SEC v. First City Fin. Corp., 890 F.2d at 1230; SEC v. Global Telecom Services LLC, et al., 325 F.Supp. 2d 94, 120 (D.Conn. 2004) ("effective enforcement of the federal securities laws requires that the SEC be able to make violations unprofitable"). The decision to order disgorgement of ill-gotten gains, and calculation of those gains, lie within the discretion of the trial court "which must be given wide latitude." CFTC v. Vartuli, et al., 228 F.3d 94, 113 (2d Cir. 2000); SEC v. Lorin, 76 F.3d 458, 462 (2d Cir. 1996). The remedy has been recognized in this Circuit since at least 1971 and upheld by at least ten other Circuit Courts of Appeal in cases brought by the SEC. SEC v. Texas Gulf Sulphur Co., 446 F.2d 1301 (2d Cir. 1971); see also, e.g., Lorin, supra (2d Cir. 1996); Commonwealth Chem. Sec., Inc., supra (2d Cir. 1978); SEC v. MacDonald, 725 F.2d 9 (1st Cir.

18

1984); SEC v. Infinity Group Co., 212 F.3d 180 (3d Cir. 2000); SEC v. Gotchy, 981 F.2d 1251

(4th Cir. 1992) (unpublished opinion, see 1992 WL 385284); SEC v. Blatt, 583 F.2d 1325 (5th

Cir. 1978); SEC v. Blavin, 760 F.2d 706 (6th Cir. 1985); SEC v. Lipson, 278 F.3d 656 (7th Cir.

2002); SEC v. Ridenour, 913 F. 2d 515 (8th Cir. 1990); SEC v. Rind, 991 F.2d 1486 (9th Cir.

1993); In re Bilzerian, 153 F.3d 1278 (11th Cir. 1998); SEC v. First City Fin. Corp., supra (D.C.

Cir. 1989).

Accordingly, Andrews should be ordered to disgorge the ill-gotten gains he received as a

result of his alleged misconduct (accepted as true on default) plus prejudgment interest thereon.

Here, the SEC has alleged and presented evidence that Andrews received $250,000 in "finder's

fees" as a result of his participation in the Landmark kickback scheme during 1998 through

February 1999. Primavera Decl. ¶5, Compl. ¶¶37, 40.

The Court also has discretion to assess prejudgment interest on disgorgement liability to

deprive the recipient of the unjust benefit of what would amount to an interest-free loan. See,

SEC v. Moran, 944 F. Supp. 286, 295 (S.D.N.Y. 1996); SEC v. Cross Financial Services, 908 F.

Supp. 718, 734 (C.D. Cal. 1995).[8] A chart containing the Commission's calculation of

Andrews' pre-judgment interest liability according to the IRS methodology for calculating

interest on tax underpayments is attached at Tab A of the Primavera Decl. The total amount of

prejudgment interest calculated on Andrews' ill-gotten gains from the date of receipt through

July 31, 2005 is $132,834.79.

---

[8]    The rate established by the Internal Revenue Service for tax underpayment is an appropriate rate
for prejudgment interest because it reasonably approximates the unjust benefit of the use of the money.
See SEC v. First Jersey Securities, 101 F.3d 1450, 1476 (2d Cir. 1996), cert. denied, 118 S. Ct. 57
(1997); see also 17 C.F.R. § 201.600 (Rule 600 of the Commission's Rules of Practice).

Accordingly, the SEC requests the Court to order Andrews to pay a total of $382,834.79 in disgorgement and prejudgment interest.

**C.    Imposition of Civil Money Penalties is Appropriate.**

In addition, the Commission respectfully requests the Court to impose a civil monetary penalty against Andrews.  Pursuant to § 20(d)(2) of the Securities Act, § 21(d)(3) of the Exchange Act, and § 209(e) of the Advisers Act, the Commission is authorized to seek civil penalties for violations of those Acts.  15 U.S.C. § 77t(d)(2); 15 U.S.C. § 78u(d)(3); 15 U.S.C. § 80b-9(e).  Like a permanent injunction, civil penalties are imposed to deter the wrongdoer from engaging in similar misconduct in the future.  Accordingly, the factors considered to determine the likelihood of future violations for the purposes of a permanent injunction, are also useful in assessing civil penalties.  SEC v. Brethen, 1992 U.S. Dist. LEXIS 20665 at *104 (S.D. Ohio 1992).  When determining the appropriate civil penalty to impose, courts examine factors such as (1) the egregiousness of violations, (2) the isolated or repeated nature of the violations, and (3) the degree of scienter involved.  Id.; see also SEC v. Deyon, 977 F. Supp. 510, 519 (D. Me. 1997); SEC v. Custable, 1996 U.S. Dist. LEXIS 19321, *13-14 (N.D. Ill. 1996).  The Exchange Act provides that the amount of penalty is determined by the court "in light of the facts and circumstances" of the particular case.

Andrews' conduct involved fraud, deceit or reckless disregard of regulatory requirements, and resulted in significant risk of substantial loss to the Pension Fund, thus subjecting him to imposition of civil penalties pursuant to the Securities Act, Exchange Act, and Advisers Act. Compl. ¶¶79, 89, 102.  His conduct was egregious and reflected a high degree of scienter as evidenced by his knowing participation in the scheme and agreement to funnel portions of his

20

fees back to Silvester through Stack. In addition, his violative conduct extended over a period of almost a year dating from his entry into the scheme in May 1998 (Compl. ¶¶31-34) to his receipt of a final payment of fees in February 1999. Compl. ¶40 and Primavera Decl. ¶5. Where, as here, the defendant's conduct involved fraud and deliberate disregard of the federal securities laws, and resulted in significant risk of substantial loss, i.e., to the Pension Fund beneficiaries, the Court is empowered to impose a civil penalty at the third and highest tier, that is, the greater of $110,000 per violation for individuals, or the gross amount of pecuniary gain received from the fraudulent scheme. 15 U.S.C. § 77t(d)(2); 15 U.S.C. § 78u(d)(3); 15 U.S.C. § 80b-9(e); 17 C.F.R. § 201.1002.

Accordingly, the Commission respectfully requests that the Court impose a civil money penalty at the highest amount allowed by law for each of Andrews's Securities Act, Exchange Act and Advisers Act violations.

## **CONCLUSION**

For the reasons set forth above, the SEC respectfully requests that the Court enter a Final

Judgment by Default against Andrews in the form to be submitted.

Respectfully submitted,

*Linda B. Bridgman*

Linda B. Bridgman
District Trial Counsel
DC Bar # 304824
Fed. ID # ct 21694

Thomas J. Rappaport
Senior Enforcement Counsel
Va. Bar # 24284
Fed. ID # phv0404

ATTORNEYS FOR PLAINTIFF
SECURITIES AND EXCHANGE COMMISSION
73 Tremont Street, 6th Floor
Boston, Massachusetts 02108
(617) 573-8929 (Bridgman)
(617) 573-8986 (Rappaport)

Dated: July 21, 2005

## Certificate of Service

This certifies that on July 21, 2005, I caused a true and correct copy of the foregoing Plaintiff's Motion for Entry of Default Judgment Against Defendant Ben F. Andrews, Jr. and Memorandum of Law and Declaration of Corliss Primavera in Support of the Motion, to be served by first class mail, postage prepaid, upon the following:

Jeremiah Donovan, Esq.
123 Elm Street, Unit 400
P.O. Box 554
Old Saybrook, CT 06475
*Counsel for Defendant Ben F. Andrews, Jr.*

Alfred U. Pavlis, Esq.
Gage & Pavlis
107 John Street
Southport, CT 06490
*Counsel for Defendant Jerome Wilson*

Richard M. Asche, Esq.
Russell M. Gioiella, Esq.
Litman, Asche & Gioiella, LLP
45 Broadway, 30th Floor
New York, NY 10006
*Counsel for Defendant Charles B. Spadoni*

John B. Hughes
Connecticut Federal Bar No. Ct05289
Assistant United States Attorney
Chief, Civil Division
United States Attorney's Office
Connecticut Financial Center
157 Church Street, 23rd Floor
New Haven, CT 06510
*Local counsel for the Plaintiff*


_____
Linda B. Bridgman, Esq.