UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION | : <br> : <br> : NO. 3:00 CV 1941 (EBB) |
| v. | : <br> : February 7, 2006 |
| BEN ANDREWS | : |

**MEMORANDUM IN SUPPORT OF**
**MOTION FOR RELIEF FROM FINAL JUDGMENT AND ORDER**

The defendant Ben Andrews has requested pursuant to Rules 55(c) and 60(b), Federal Rules of Civil Procedure, relief from the final judgment and order docketed in this case on January 30, 2006, and that the default entered on June 20, 2005 be set aside. This memorandum is submitted in support.

*Factual and procedural background.* As this Court is fully aware, this case is a civil companion case to the criminal prosecution of Ben Andrews in United States v. Ben Andrews, D. Conn. crim. no. 3:00CR217(EBB) and Second Circuit docket no. 05-2630-cr, in which Mr. Andrews was charged with four other defendants in a multicount indictment arising out of corruption by Connecticut's Treasurer, Paul Silvester. Three of the defendants, Triumph Capital, Frederick McCarthy and Lisa Thiesfield pleaded guilty. Mr. Andrews and Charles Spadoni were tried in severed trials. Mr. Andrews was tried before this Court over a three-week period in September of 2003. Following Mr. Andrews's conviction, this Court sentenced Mr. Andrews to a term of imprisonment of thirty months, a fine of $250,000, a special assessment of $900, and three years' supervised release. A timely appeal was taken and the status of the appeal is the Mr. Andrews' brief has been filed and the government's is soon due.

The present case was commenced after the return of the indictment in the criminal case. The docket sheets indicate that the complaint was filed on October 10, 2000. Doc. no.1. The undersigned, who represented Mr. Andrews in the criminal case and on appeal, agreed to accept service of the complaint, in order to accommodate both the government and Mr. Andrews. He did not, however, file an appearance or answer on behalf of Mr. Andrews.

The government moved to stay proceedings in this case during the pendency of the criminal case. The motion, obviously, made sense from the government's point of view:

2

proceeding with discovery (including depositions of the government's cooperating witnesses as well as other witnesses who might well be expected to rely on their fifth amendment privileges) would have been costly and messy. At a hearing on April 24, 2001, at which USDJ Alan H. Nevas (to whom these cases had been assigned) considered matters relating to both the civil and criminal proceedings, the court suggested that the undersigned file an appearance in the civil case solely for the purpose of setting forth Mr. Andrews' position on the government's motion for a stay. The undersigned did so, but the appearance (docket no. 66) made clear that it was limited to the purposes of that day's hearing.

Judge Nevas denied the government's motion, but the government took no step to advance this case until after the criminal trial, and Mr. Andrews did not, either, given that the expense of defending both the criminal case and the SEC civil case would have been crippling.

On May 3, 2005, attorneys for the SEC warned that the SEC would move for a default if Mr. Andrews did not file an answer by May 20, 2005. This created an enormous difficulty. As noted below, Mr. Andrews' resources are modest and even obtaining the fee to pay the cost of paying for the transcripts necessary for an appeal has been difficult. The attorney fee required to defend this kind of action against the SEC is prohibitive and, of course, there is no CJA counsel in this kind of case. In any case, the SEC's deadline was not met, and on June 14, 2005, the SEC moved for the entry of default, serving a copy on the undersigned. On June 20, 2005, an order on the motion for default entry was entered.

There followed the mistake which gives rise to the present motion. The undersigned decided that he would defend this case without charging Mr. Andrews a fee. Accodingly, he undersigned reviewed the clerk's file, and for reasons that even now are unclear to him, was under the erroneous impression that no default had yet entered. (Of course, since neither the undersigned nor Mr. Andrews had yet appeared, no notice of the entry of the default was provided to either by the clerk.) Under this misimpression, the undersigned filed on August 1, 2005, a Response to the SEC's Motion for the Entry of a Default, along with an appearance and Mr. Andrews' answer. In that response, we argued that there would be no harm in denying the motion to enter a default judgment since the long delay in commencing active litigation in this

3

case had benefitted both the government and Mr. Andrews -- and, indeed, the government had sought unsuccessfully to obtain a court order to allow the delay that actually occurred -- and that although the SEC had been serving the undersigned with various pleadings, the undersigned had not filed an appearance on behalf of Mr. Andrews (and had not, prior to that point, agreed to represent him in the SEC proceedings). The SEC duly replied.

That response in opposition to the SEC's motion for entry of default was misnamed. If counsel had realized that the default had already entered, he would have entitled it a motion to set aside a default pursuant to Rule 55(c), which, we believe, would have been granted. (The time lag between June, when the SEC moved for the entry of a default, and August, when our answer was filed, is insignificant in the context of this case and did not harm the SEC in any way.)

Because of counsel's mistake in believing the motion for the entry for default had not been entered, this Court entered its judgment on January 30, 2006, although the defendant had filed his answer to the SEC's complaint and the undersigned had filed an appearance in the case.

*Discussion*: Although this case was filed at the end of 2000, the delays in the case have generally benefitted both the plaintiff, the defendant and the Court. As noted, at the commencement of the proceedings, the government moved to stay that proceedings in this case in order to avoid the complicated situation that would result from proceeding with discovery in both the criminal case and the SEC case. Such a delay benefitted Mr. Andrews as well, since the cost of defending both the criminal and SEC civil case would have been prohibitive. Such a delay benefitted the Court, as well, since the kinds of disputes that might arise during civil discovery in a complicated matter such as this one would undoubtedly have occupied an enormous amount of the Court's attention. (Although Mr. Andrews was quite restrained in his pretrial filings in the criminal case, the extraordinary volume of motions, requests, and memoranda filed by some of his co-defendants, and by the government with respect to his co-defendants (who all, in the end, except for Mr. Spadoni, pleaded guilty anyway), provides some indication of the amount of court time that would have been occupied had the civil and criminal cases proceeded simultaneously.)

The delay in the case also, we think, may have provided the Court with another

JEREMIAH DONOVAN ● ATTORNEY AT LAW ● P.O. BOX 554 ● OLD SAYBROOK CT 06475 ● (203) 388-3750 ● JURIS NO. 305346

4

advantage. Although Mr. Andrews made no effort to settle the case prior to his conviction, with that conviction, the impetus to settle the civil case has become more pressing. Had he been acquitted, the SEC may have been less interested in pursuing its civil remedies. The delay in the proceedings has, we believe, increased significantly the possibility that this matter will be settled in a manner that implements the SEC's interests but is not crippling to mr. Andrews.

As this Court is aware from the sentencing proceedings in which the United States Probation Office, the United States Attorney, and the Court explored in detail Mr. Andrews' finances, Mr. Andrews is essentially without assets. His life as an entrepreneur, political figure and civil rights leader has left him, at the age of 66, without any significant property. Although he is actively seeking out entrepreneurial activities that will allow him to pay off the $200,000 fine imposed on him in the criminal proceedings, he is essentially without funds, living largely upon the salary of his gainfully employed wife. Not only does he not have the funds to satisfy this judgment, he does not even have the funds to defend this litigation. Indeed, obtaining the $17,000 necessary to pay for the transcripts in the criminal appeal was a great difficulty, and Mr. Andrews had to rely upon the generosity of friends and admirers in order to raise such funds.

The settlement agreements made by the SEC with others prosecuted in this matter -- Silvester, McCarthy, Thiesfield – and still others who were not prosecuted -- Stack, Wilson and Aulfeld – have been far more moderate than the default judgment that has been entered against Mr. Andrews. While we do not suggest that in seeking a default judgment, the SEC is required to reduce its claims in the same manner that it does with respect to defendants who settle with it, we do suggest that it should be a matter of concern to the Court when the civil penalties imposed on a particular defendant are far out of line with the penalties imposed on those similarly situated. (In fact, we believe that this consideration -- the Mr. Andrews be punished commensurately with similar defendants -- was one of the factors that caused this Court to impose a criminal sentence below the range recommended by the sentencing guidelines, despite the fact that, unlike some others, he pleaded guilty and elected to be tried.)

We ask the Court to consider also that the default judgment is imposed on top of a criminal sentence that requires Mr. Andrews to pay a criminal fine of $200,000 and serve a two-

5

and-one-half year prison sentence.

Finally, we ask the Court to consider that all of this has come to pass not because of any tactical or strategic consideration that failed, or not any act on Mr. Andrews part, but simply because of the mistake and inadvertence of the undersigned in reviewing the court file and not understanding that a default had already entered at the time that he filed the appearance, the answer, and the response to the motion to enter the default.

*Conclusion:*  For these reasons, the undersigned respectfully requests that the Court grant relief from the final judgment and order docketed in this case on January 30, 2006, and that the default entered on June 20, 2005 be set aside.  (We also suggest that if this motion is granted, that this is the appropriate time to refer the case to a magistrate or parajudicial officer in an attempt to resolve the case in a manner that satisfied the requirements of the SEC and is fair to Mr. Andrews.)

                                                       Respectfully submitted,

                                                       JEREMIAH DONOVAN
123 Elm Street--Unit 400
P.O. Box 554
Old Saybrook, CT 06475
(860) 388-3750
FAX 388-3181
Juris no. 305346
Fed.bar.no. CT 03536